United States District Court
Southern District of Texas
FILED

APR 2 8 2003

Michael N. Milby
Clerk of Court

- 72

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| IN RE: | District Court Civil Case # B-03-▓▓ |
| Charles B. FELDMAN dba | In Bankruptcy Case # 90-01254-B-11 |
| Charles B. Feldman Investments | In Chapter 11 |
|     Debtor | |
| Colin Kelly KAUFMAN, Appellant | |
| | |
| vs. | |
| | |
| Charles B. FELDMAN, Debtor, and | |
| Michael Boudloche, Appellees | |

Font: Korinna

ORIGINAL BRIEF ON APPEAL
OF THE COMPROMISE AND SETTLEMENT OF ADVERSARY #01-2110 OF
APPELLANT COLIN KELLY KAUFMAN

---

Respectfully Submitted by:

Colin Kelly Kaufman, Attorney at Law
1106 Third Street 78404-2312
P.O. Box 1662
Corpus Christi, TX. 78403-1662

Telephone (361) 888-8865
Telecopier (361) 888-8172

email address: colinkkk@yahoo.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

**-72**

| | |
|---|---|
| IN RE:<br>Charles B. FELDMAN dba<br>Charles B. Feldman Investments<br>____Debtor | District Court Civil Case # B-03-~~072~~ |
| Colin Kelly KAUFMAN, Appellant<br><br>vs.<br><br>Charles B. Feldman, Debtor &<br>Michael Boudloche, Appellees | In Bankruptcy Case # 90-01254-B-11<br>In Chapter 11<br>Compromise of Adv. 01-2090 |

Table of Contents of Appellant Colin Kelly Kaufman's
Original Brief on Appeal of the
<u>Compromise and Settlement of Adversary # 01-2090</u>

Table of Contents.................................................................................................................i

Table of Cases.................................................................................................................iv

Table of Statutes and Rules.................................................................................................vii

Table of Issues Designated on Appeal.................................................................................xi

I. Statement of the Case.................................................................................................1

II. Jurisdiction.................................................................................................................1

III. Standard of Review.................................................................................................1

IV. Introduction to Appeal.................................................................................................2

      A. Basic Background.................................................................................................2

            1. Payments to Be Made.................................................................................2
            2. CKS Appears.................................................................................2
            3. After the Plan Term Expired.................................................................3

      B. 2001 Litigation.................................................................................................3

      C. Plan Amended Again.................................................................................................4

     D. An Aggrieved Party...........................................................................................5

V. Facts on This Appeal...........................................................................................5

     A. Common Appellate Facts...................................................................................5

             Footnote 1 (Fraud from breach of a duty to speak)............................6

     B. Specific Facts for This Appeal............................................................................6

VI. Argument...........................................................................................................7

     A. An Ignorant Trustee...........................................................................................7

         1. What the Trustee Admitted Here...............................................................7
           (a). A Trustee Is Impeached When He Admits in His Proffer of Testimony
           that He Doesn't Understand.............................................................7
                Footnote 2 (Boudloche admits neither he nor his attorneys understood
                what they did)..........................................................................8
                Footnote 3 (arbitrary to take action based on a lack of knowledge)..............8
           (b). A Trustee Is Impeached When He Can't Say What the Case Is About........................8
                Footnote 4 (Argument is not evidence)...........................................8
                Footnote 5 (numerous instances where Mr. Boudloche knew nothing
                about the case)........................................................................8
           (c). A Trustee Opinion Gets Less Deference When He Is New and Lacks Knowledge.......9
                Footnote 6 ("We did not delve into [the details] too deeply").......................9
                Footnote 7 (Mr. Boudloche read Mr. Kaufman's Proposed Final Report)..........10
           (d). A Trustee's Business Judgment Is Suspect When He Doesn't Know the Rules...........10
                Footnote 8 (Mr. Boudloche gives Mr. Feldman a break because he can tell
                that Mr. Feldman's wrong was "inadvertent")............................................11
                Footnote 9 (Mr. Boudloche had at least one meeting with Mr. Feldman to
                make this conclusion of inadvertence).....................................................11
                Footnote 10 (motive with which a contract is breached is seldom relevant in
                determining the authorized measure of damages)...........................................11
           (e). Does It Matter How Much Money the Defendant Has..................................................11
                Footnote 11 ("I am not aware that that would have impacted settlement")......12
         2. Incurable Admission.....................................................................................12
           (a). Failing to Follow the Rules Is an Abuse of Discretion.................................................12
                Footnote 12 (Always error to decide not using the right rules)...........................12
                Footnote 13 (Quote from Protective Committee v. Anderson, 390 U.S. 414, 88
                S.Ct. 1157, 20 L.Ed. 1 (1968), "evaluations of evidence reached by accurate
                application of erroneous legal standards are erroneous evaluations.")............12
           (b). Mr. Boudloche Did Not Have More Discretion than the Court...................................12
                Footnote 14 (Sims v. Fox, 505 F.2d 857 [5th Cir. 1974])..................................13
                Footnote 15 (Gulf South Pipeline, Inc. v. FERC, 876 F.2d 431 [5th Cir. 1989])13

Footnote 16 (Chevron Oil Co. v. Andrus, 588 F.2d 1383 [5th Cir. 1979])........13

Footnote 17 (Riley v. St. Luke's Episcopal Hospital, 196 F.3d 514, 530-31 (5th Cir. 1999)...................................................................................14

Footnote 18 (trustee is a federal instrumentality, citing Barton v. Barbour).....14

B.  Other Motives...................................................................................................14

1.  Why Did He Recommend It?...................................................................14

(a).  The Situation Here............................................................................15

(b). Personal Motives................................................................................15

Footnote 19 (Chevron Chemical Co. v. Oil, Chemical & Atomic Workers Local Union 4-447, 47 F.3d 139, 444 [5th Cir. 1995], citing Duhon v. Texaco, Inc., 15 F.3d 1302, 1306 [5th Cir. 1994])................................................15

(c) Lack of Objective Support...................................................................15

Footnote 20 (Giving debtor break at creditors' expense because of mistaken view that debtor's wrongdoing was "innocent" violates law............................15

Footnote 21 (cross-reference to previous footnote)........................................16

2.  Sub Rosa Closing of the Estate.....................................................................16

Footnote 22 (Cases showing sub rosa plans are illegal.)...................................16

Footnote 23 (cannot waive the basic value promised in the case – otherwise no "consideration")...........................................................................17

(a).  No Business Reason to Do It................................................................17

(b).  Appellant Is the Target.......................................................................17

Footnote 24 (right of Appellant to restitution of status quo ante)....................17

Footnote 25 (federal cases show right to restitution exists)..............................18

Footnote 26 (In re Manges (Manges v. Seattle First Natl. Bank), 29 F.3d 1034 (5th Cir. 1994).....................................................................19

VIII.  Conclusion......................................................................................................19

Signature.................................................................................................................20

Certificate of Service................................................................................................20

## Table of Citations

Abbott Laboratories v. Gardner, 347 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.
    2d 681 (1967)..................................................................................fn. 16, p. 14

Alejandro v. Bell, 84 S.W.3d 383, 393 (Tex. App. Corpus Christi 2002, no writ)......fn. 4, p. 8

3 Am. Jur. 740,  "Appeal & Error", Sec. 1242, at fn. 7 (1936).............................fn. 25, p. 18

In re Appletree Markets, Inc., 155 B.R. 431, 435 (SD Tex. 1993) (Simeon Lake,
    Dist. J.)..........................................................................................fn. 25, p. 18

Arkadelphia Mill Co. v. St. Louis Southwestern Ry. Co., 249 U.S. 134, 39 S.Ct.
    237, 63 L.Ed. 517 (1929)................................................................fn. 25, p. 18

Atkinson v. Equitable Life Assur. Soc. of the United States, 519 F.2d 1112, fn. 8
    (5th Cir. 1975)...............................................................................fn. 3, p. 8

Baltimore & Ohio Rd. Co. v. United States, 279 U.S. 781, 49 S.Ct. 492, 73 L.
    Ed. 954 (1936)..............................................................................fn. 25, p. 18

Bank of United States v. Bank of Washington, 6 Pet. (___ U.S.) 8, 8 L.Ed. 299
    (1841)..........................................................................................fn. 25, p. 18

In re Barron (Daniels v. Barron), ___ F.3d ___ (5th Cir. April 4, 2003).................fn. 12, p. 12

Barton v. Barbour, 104 U.S. 126, 26 L.Ed. 672 (1881).........................................fn. 18, p. 14

Beathard v. Johnson, 177 F.3d 340, 348 (5th Cir. 1999)............................................fn 4, p. 8

BMG Music v. Martinez, 74 F.3d 87, at p. 89 in fn. 3 (5th Cir. 1996)
    (Wisdom, Cir. J.)...........................................................................fn. 25, p. 18

In re Braniff Airways, Inc. (Pension Benefit Guar. Corp. v. Braniff Airways, Inc.),700
    F.2d 935, 940 (5th Cir.1983)..........................................................fn. 22, p. 16

Burlington v. Crouse, 228 U.S. 459, 473, 33 S.Ct. 564, 568, 57 L.Ed. 920
    (1913)..........................................................................................fn. 20, p. 15

In re Cajun Electric Power Coop., Inc. (Official Committee of Unsecured Creditors
    v. Cajun Electric Power Cooperative, Inc.), 119 F.3d 349 (5th Cir. 1997)..fn. 22, p. 16

Chevron Chemical Co. v. Oil, Chemical & Atomic Workers Local Union 4-447, 47

F.3d 139, 444 (5th Cir. 1995).................................................................fn. 19, p. 15

Chevron Oil Co. v. Andrus, 588 F.2d 1383 (5th Cir. 1979)....................fn. 16, p. 13

Cleveland v. Tufts, 69 Tex. 580, 7 S.W.72 (1888)..................................fn. 24, p. 17

In re Coastal Plains, Inc. (Browning Mfg. v. Mims, Trustee), 179 F.3d 197 (5th
        Cir. 1999)..............................................................................p. 1; fn. 12, p. 12

In re Continental Air Lines, Inc. (Institutional Creditors of Continental Air Lines v.
Continental Air Lines, Inc.), 780 F.2d 1223, 1227-28 (5th Cir.1986)...................fn. 22, p. 16

Corbin on  Contracts Secs. 151, 753 (3d Ed. 1964).............................fn. 23, p. 17

Corbin on Contracts, Sec. 992 (3rd Ed. 1964).......................................fn. 10, p. 11

In re Crystal Oil Co., 854 F.2d 79 (5th Cir. 1988)...................................fn. 25, p. 18

Dakota County v. Glidden, 113 U.S. 222, 5 S.Ct. 528, 28 L.Ed. 981 (1896)........fn. 25, p. 18

Duhon v. Texaco, Inc., 15 F.3d 1302, 1306 (5th Cir. 1994)..................fn. 19, p. 15

Dunlop v. Bachowski, 421 U.S. 560, 568, 95 S.Ct. 1851, 1858, 44 L.Ed.
        2d 377 (1975)........................................................................fn. 16, p. 14

In re Energas Co., 63 S.W.3d 50 in fn. 4, (Tex. App. 2001, no writ).........................fn. 4, p. 8

Guilbeau v. W. W. Henry Co., 85 F.3d 1149, in fn. 47, p. 1168 (5th Cir. 1996)........fn. 4, p. 8

Gulf South Pipeline, Inc. v. FERC, 876 F.2d 431 (5th Cir. 1989)...........................fn. 15, p. 13

Kern v. Gleason, 840 S.W.3d 730, 734 (Tex. App. Amarillo 1992, no writ).............fn. 4, p. 8

Koon v. United States, 518 U.S. 81, 100, 116 S.Ct. 2035, 1351 L.Ed.2d 392
        (1996)..................................................................................fn. 12, p. 12

Latvian Shipping Co. v. Baltic Shipping Co., 99 F.3d 690, 692 (5th Cir. 1996).....fn. 12, p. 12

Libuti v. United States, 178 F.2d 114, 122 (2d Cir. 1999)..............fn. 24, p. 17; fn. 25, p. 18

In re Manges (Manges v. Seattle First Natl. Bank), 29 F.3d 1034 (5th Cir. 1994)..fn. 26, p. 19

McCain v. NME Hospitals, Inc., 856 S.W.2d 751, 757 (Tex. App. Dallas 1993, no writ)........................................................................................... fn. 4, p. 8

Meadowbriar Home for Children, Inc. v. Gunn, 81 F.3d 521, 535 (5th Cir. 1996).fn. 12, p. 12

In re Missionary Baptist Foundation of America (Wilson v. Huffman), 818 F.2d 1135, 1142 (5th Cir.1987)...........................................................................................p. 1

In re Multiponics, Inc., 622 F.2d 709, 713 (5th Cir.1980)..................................................p. 1

Peticolas v. Carpenter, 53 Tex. 23 (1880)..........................................................fn. 24, p. 17

Protective Committee v. Anderson, 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed. 1 (1968)..........................................................................................fn. 13, p. 12

Reed v. Allen, 286 U.S. 181, 52 S.Ct. 532, 81 A.L.R. 703, 76 L.Ed. 1054 (1934)..........................................................................................fn. 25, p. 18

Republic Natl. Bk. of Miami v. United States, ___ U.S. ___, 113 S.Ct. 554, at p. 558, 121 L.Ed2d 474 (1992)........................................................fn. 25, p. 18

Riley v. St. Luke's Episcopal Hospital, 196 F.3d 514, 530-31 (5th Cir. 1999).......fn. 17, p. 14

Rusk v. Cort, 369 U.S. 367, 379-80, 82 S.Ct. 787, 794, 7 L.Ed.2d 809 (1962)....fn 16, p. 14

Sims v. Fox, 505 F.2d 857 (5th Cir. 1974)............................................................fn. 14, p. 13

Tenth Ward Road Dist. v. Texas & Pacific Ry. Co., 12 F.2d 245, 45 A.L.R. 1513 (1929)........................................................................................fn. 25, p. 18

In re Texas Extrusion Corp., 844 F.2d 1143, 1159 (5th Cir.), cert. denied, 488 U.S. 926 (1988)..........................................................................................fn. 20, p. 15

3-B Tex. Jur. 774, "Appeal & Error" (1949).........................................................fn. 22, p. 17

Texas Land & Irrigation Co. v. Sanders, 101 Tex. 616, 111 S.W. 648 (1908)......fn. 22, p. 17

United States v. Kane, 887 F.2d 568 (5th Cir. 1989)..................................................fn. 4, p. 8

Webb v. Reserve Life Ins. Co., 954 F.2d 1102, 1103 (5th Cir.1992)...................................p.1

In re W.J. Services Inc. (Jones v. Cage), 146 B.R. 190, 191 (SD Tex. 1991) (Hittner, Dist. J.)..........................................................................................fn. 20, p. 15

<u>Table of Statutes and Rules on Appeal</u>

Bankruptcy Code (11 U.S. Code) Sec. 327:

      (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

      (b) If the trustee is authorized to operate the business of the debtor under section 721, 1202, or 1108 of this title, and if the debtor has regularly employed attorneys, accountants, or other professional persons on salary, the trustee may retain or replace such professional persons if necessary in the operation of the business.

      (c) In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

      (d) The court may authorize the trustee to act as the attorney or accountant for the estate if such authorization is in the best interest of the estate.

      (e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

      (f) The trustee may not employ any person that has served as an examiner in a case.

Bankruptcy Code (11 U.S. Code) Sec. 328:

      (a) The trustee, or a committee appointed under section 1102 of this title, with the Court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title , as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis.  Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

      (b) If the court has authorized the trustee to serve as an attorney or accountant for the estate under section 327(d) of this title, the court may allow compensation for the trustee's services as such attorney or accountant only to the extent that the trustee performed services as attorney or accountant for the estate, and not for the performance of any of the trustee's duties that are generally performed by the trustee without the assistance of an attorney or accountant for the estate.

      (c) Except as provided in section 327(c), 327(e), or 1107(b) of this title, the court may deny allowance of compensation for professional services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

Bankruptcy Code (11 U.S. Code) Sec. 330(a):

(a)    (1) After notice to the parties in interest and the United States trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103 —

(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person or attorney, and by any paraprofessional person employed by such person; and

(B) reimbursement for actual, necessary expenses.

(2) The court may, on its own motion or on the motion of the United States Trustee, the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested.

(3)    (A) In determining the amount of compensation that is to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including —

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were reasonably necessary to the administration of, or beneficial at the time the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation was reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

(4)    (A) Except as provided in subparagraph (B), the Court shall not allow compensation for —

(i) unnecessary duplication of services; or

(ii) services that were not —

(I) reasonably likely to benefit the debtor's estate; or

(II) necessary to the administration of the case.

(B) In a chapter 12 or 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

(5) The court shall reduce the amount of compensation awarded under this section by the amount of any interim compensation awarded under section 331, and, if the amount of such interim compensation exceeds the amount of compensation awarded under this section, may order the return of the excess to the estate.

(6) Any compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application.

Bankruptcy Code (11 U.S. Code) Sec. 503(b)(2),(3) & (4):

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under Sec. 502(i) of this title, including —

(1) * * *

(2) compensation and reimbursement awarded under section 330(a) of this title;

(3) the actual necessary expenses, other than compensation and reimbursement specified by paragraph (4) of this subsection, incurred by —

(A) a creditor that files a petition under section 303 of this title;

(B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;

-ix-

(C) a creditor in the prosecution of a criminal offense relating to the case or to the business or property of the debtor;

(D) a creditor, an indenture trustee, an equity security holder, or committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title;

(E) a custodian superseded under section 543 of this title, and compensation for the services of such custodian; or

(F) a member of a committee appointed under section 1102 of this title, if such expenses are incurred in the performance of the duties of such committee;

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the value, and the extent of the services, and the cost of comparable services other than in a case under this title, and reimbursement for the actual, necessary expenses by such attorney or such accountant;

(5) * * *

(6) * * *

............................................................Bankruptcy Code (11 U.S.Code) Sec. 506(c):

The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

P. 1...........................................................................................................28 U.S.C. Sec. 158(a):

(a) The district courts of the United States shall have jurisdiction to hear appeals –

(1) from final judgments, orders and decrees;

(2) from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or decreasing the time periods referred to in section 1121 of such title; and

(3) with leave of the court, from other interlocutory orders and decrees.

P. 1.........................................................................................................28 U.S.C. Sec. 1334(a):

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

P. 1.........................................................................................Rules of Bkcy. Procedure Rule 8013:

On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order or decree, or remand with instructions for further proceedings. Findings of fact, whether or not based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses.

-x-

<u>Table of Issues Presented on Appeal</u>

Appellant designated the following issues on his Appeal in the Compromise and Settlement of Adversary # 01-2090, to the United States District Court, Southern District of Texas, Brownsville Division:

1. <u>Admits Not Understanding</u>. Whether the usual rules deferring to the business judgment of a trustee to settle litigation continue to apply when the plan trustee in question

     (a). admits in his proffer of testimony that "I have been unable to understand the * * * reasoning or calculations behind the suit" being settled;

     (b). on cross-examination never gives and is unable to remember the fundamental aspects of the theories of the suit being settled;

     (c). is a newcomer to the case, has given it little attention, and is uninformed as to many of its details;

     (d). mis-states and misunderstands the rules as to what burden of proof the plaintiff had to carry in the action being settled;

     (e). even a judge's discretion is abused when it appears that he is not following the applicable rules of law; and

     (f). the Constitution does not contemplate that a higher authority (including a court) may delegate more unreviewable authority to a subordinate power than the higher authority itself possesses.

2. <u>Other Motives</u>. Whether the usual rules deferring to the business judgment of a trustee to settle litigation continue to apply when the plan trustee in question

     (a). appears to have other motives to settle, and

     (b). gives testimony demonstrating personal bias and hostility toward his predecessor, such as might have colored his judgment.

     (c) admits waiving without additional consideration additional damages that might have been recoverable because he allegedly thought the defendant's wrongs were unintentional.

3. <u>*Sub Rosa* Closing of the Estate</u>. Whether it is proper to try to *de facto* close the estate by making an order on compromise and settlement when

     (a). neither the claims nor the administrative expenses had been finally settled, and
     (b). Appellant had a legally protected interest in being returned to the *status quo ante* if his appeal prevailed, which the replacement plan trustee is trying to terminate.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | | **-72** |
| Charles B. FELDMAN dba | | District Court Civil Case # B-03-~~NA~~ |
| Charles B. Feldman Investments, Debtor | | |
| Colin Kelly KAUFMAN, Appellant | | In Bankruptcy Case # 90-01254-B-11 |
| vs. | | In Chapter 11 |
| Charles B. Feldman, Debtor & | | Appeal of Settlement of Adv. 01-2090 |
| Michael Boudloche, Appellees | | |

COLIN KELLY KAUFMAN'S ORIGINAL BRIEF ON APPEAL
OF THE COMPROMISE AND SETTLEMENT OF ADVERSARY # 01-2090

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

NOW COMES Colin Kelly Kaufman, former plan trustee in the captioned case and

the Appellant, and respectfully shows the Court as follows:

I. Statement of the Case. This appeal concerns an order of the bankruptcy court which

settled out a $1 million claim for $25,000.

II. Jurisdiction. This Court has jurisdiction under 28 U.S.C. Sec. 1334(a) and 158(a).

III. Standard of Review. The district court acts as an appellate court when reviewing a

bankruptcy court's decision. *See*, Webb v. Reserve Life Ins. Co., 954 F.2d 1102, 1103 (5th

Cir.1992). The standard of review on appeal of bankruptcy court decisions is de novo for

questions of law; In re Missionary Baptist Foundation of America (Wilson v. Huffman), 818

F.2d 1135, 1142 (5th Cir.1987) (bankruptcy court's conclusions of law "are freely

reviewable on appeal"), quoting In re Multiponics, Inc., 622 F.2d 709, 713 (5th Cir.1980); In

re Coastal Plains, Inc. (Browning Mfg. v. Mims), 179 F.3d 197, 204 (5th Cir. 1999) (error of

law is always an abuse of discretion, citing U.S. Supreme Court case); and the standard of

review is "clearly erroneous" for findings of fact; Rules of Bankruptcy Procedure Rule 8013

and *see also*, Webb, 954 F.2d 1102 at 1103.

IV. Introduction to Appeal.

    A. Basic Background. In 1990, the Charles B. Feldman bankruptcy was filed. The

FDIC was the dominant creditor. Colin Kelly Kaufman was the third person hired as

examiner. Later, when they could not get a bank to agree to serve, counsel for the FDIC

and the debtor persuaded Mr. Kaufman to serve as Plan Trustee for Mr. Feldman's

bankruptcy estate. The order amending the plan to provide for Mr. Kaufman's employment

also required one of Mr. Feldman's companies, Feldman Valley Wide, to pay $50,000 to the

Plan Trustee, so there would be at least that much money to pay for administrative

expenses in the case. In return for the promised payments, the plan settled out claims that

Mr. Feldman had committed fraudulent conveyances, and gave him a discharge.

        1. Payments to Be Made. This plan called for Mr. Feldman to get money

from the "Feldman entities" to make five years of payments to the plan trustee, and for Mr.

Feldman to give the plan trustee enough financial information to assure him that all that

was owed was paid, and all expenditures or deductions were proper. The plan let Mr.

Kaufman sue Mr. Feldman in case Mr. Feldman breached his obligations under the Plan.

Mr. Feldman's performance could not be verified until 1998, after the last payments were

made for the plan year 1997. The plan had provisions for Mr. Feldman to retain funds,

out of the proceeds of property he sold. Mr. Feldman could use these retainages that

might have gone to creditors to pay for expenses and taxes, subject to a duty to give

information to the Plan Trustee so that the propriety of these expenditures could be verified.

        2. CKS Appears. In 1995, the FDIC's claim was sold to CKS Financial, Inc.,

which promptly got in litigation with all the other parties.  CKS's president, Steve Ditto

demanded several accountings.   Mr. Kaufman furnished several accountings, none of

which discussed expenditures, because no expenditures had been made by Mr. Kaufman.

These disclosed  that very little could be expected to be distributed to creditors because of

the amount of the administrative expenses which would be owed to Mr. Kaufman.   All of

these were accepted without complaint by CKS's counsel from time to time.  Finally, orders

were entered denying CKS's request for an accounting, and hiring an accountant, Mr.

White, to make any new accounting that CKS might ask for.  Still later, Mr. Kaufman began

paying his administrative expenses.

         3. <u>After the Plan Term Expired</u>.  Also subsequent to the Plan term, Mr.

Kaufman discovered that Mr. Feldman had not sold and accounted for bank stock,

scheduled at a value of some $15,000.  Some $201,000 was created for creditors when Mr.

Kaufman required the sale of this stock.  Mr. Feldman's final report was then completed for

him by his counsel, James P. Moon, and he sought to close the case.  Mr. Kaufman

resisted, because three parcels of real estate had not been sold by Mr. Feldman, and Mr.

Kaufman felt they ought not to be abandoned; and Mr. Kaufman had not received any

information about the income of the Feldman interests during the plan term, nor about the

nature or propriety of any expenditures by the Feldman interests during the plan term.

Since Mr. Feldman had presided over the construction of several new stores during the Plan

term, there were plenty of unauthorized things the money could have been spent on instead

of genuine expenses of the estate.

        B.  <u>2001 Litigation</u>.  Eventually in late 2000, Mr. Feldman's accountant furnished

some tax returns for Mr. Feldman individually.  So Mr. Kaufman began to work on a

Proposed Final Report.  In April, 2001, he completed that.  The report contained the

invoices and the tax returns, and Mr. Kaufman's analysis of them, noting that Mr. Feldman

would appear to owe creditors amounts in the high six figures, but probably not in the

seven digits, based on the tax information he was furnished, and suggesting that a

settlement in the range of $225,000 would be fair to all parties.  A couple of days after this

report was completed, CKS hired its sixth attorney, Matthew A. Rosenstein.  Mr. Rosenstein

began a campaign to save Mr. Feldman from having to pay the estate what he had

promised, and to prevent Mr. Kaufman from discovering what Mr. Feldman had spent the

"retainages" on.   Though Mr. Ditto's counsel in 1995-1997 did not complain at the time;

four years later, Mr. Rosenstein claimed that the accountings which had been furnished

were insufficient for not disclosing expenditures – i.e., for lacking the sentence, "no

expenditures have been made."  Mr. Rosenstein also claimed it was illegal for Mr. Kaufman

to pay himself any fees, and that Mr. Kaufman had paid himself too much, and that he

deceived the creditors.

     C.  <u>Plan Amended Again</u>.  When both CKS and Parkwell supported by Mr. Moon

sought Mr. Kaufman's removal, the judge signed an order removing Mr. Kaufman, and

appointing Mr. Boudloche as succesor, by an "amendment of the plan."  Since there was

no doubt that CKS, Parkwell & the debtor together could amend the plan (and Mr.

Kaufman's appointment itself came by an amendment of the plan), there was no appeal.

The bankruptcy judge made findings of fact stating that Mr. Kaufman had not tried to hide

anything from any creditors, nor failed to make accountings, and stating that Mr. Kaufman

would be permitted to seek additional attorneys fees at a later time.

     D. <u>Aggrieved Party</u>. Mr. Rosenstein then filed grievances against Mr. Kaufman, alleging "no accountings"(!), excess and unconscionable payments, and payments out of trust; but Chief United States District Judge George P. Kazen denied relief against all the filed grievances except one on which he reserved decision, based on a recommendation to that effect from United States District Judge Keith P. Ellison (board certified by the Texas Board of Legal Specialization in bankruptcy law). See the letter ruling of December 6, 2001, attached. Then the state bar committee was prepared to dismiss its grievance, as well. But someone induced the bankruptcy court – without notice, nor hearing nor with grounds stated on the record, nor with any bankruptcy related reason to do so, nor any public disclosure of the identity of the person at whose instance the court acted – to issue an order requiring Mr. Kaufman to file a final fee application in early 2002. Given those antecedents, no good result could be expected from the fee application hearing. And surely enough, when the fee application was filed, the resulting order, some ten months after removal and replacement of Mr. Kaufman, found a breach of fiduciary duties. So the state bar committee reversed its position. Then the bar filed suit, and Mr. Kaufman removed the case to federal court where it is still pending, and filed a motion for summary judgment, which is still pending.

V. <u>Facts on This Appeal</u>.

     A. <u>Common Appellate Facts</u>. In the appeal to the Fifth Circuit, Mr. Kaufman appealed from a bankruptcy court order denying his First and Final Fee Application, made under Bkcy. Code (11 U.S.C.) Sec. 503(b). The bankruptcy court order was affirmed by

-5-

Judge Hilda Tagle in the District Court. While this action was pending before Judge Tagle, Mr. Boudloche filed this motion to compromise and settle the adversary proceeding which Mr. Kaufman had brought against Mr. Feldman for $1 million for his breach of his obligations to the bankruptcy estate under the plan. This was intended to effectively moot Mr. Kaufman's appeal by compromising and settling with Mr. Feldman for so small an amount of money that Mr. Kaufman would be paid nothing if he won the appeal to the Fifth Circuit. But the Plan expressly provided for Mr. Feldman to reveal tax and financial information to Mr. Kaufman, and he did not reveal it; and apparently never planned to reveal it;[1] so Mr. Kaufman brought a separate and independent fraud action in district court. This action asserts fraud from a failure to speak when there was a duty to speak.

B. Specific Facts for This Appeal. The hearing before the bankruptcy judge demonstrated that Mr. Boudloche had no idea why Mr. Feldman was sued by Mr. Kaufman, what theories of liability could be used, what claims had been already asserted, how much could be recovered under them, and what the defenses were that Mr. Feldman could use or not use against the claimed breach of contract. The bankruptcy judge's subsequent announcement that he had to give deference to the reasoned business judgment of the trustee ignored that Mr. Boudloche met Mr. Feldman once, and decided on the basis of that one meeting that the man was a wonderful person who deserved Mr. Boudloche's help even at the expense of the creditors that Mr. Boudloche was supposed to be representing. That was not reasoned business judgment, and a normal trustee would never have given

---

[1] Even if he originally did plan to reveal it, failure to speak when there is a duty to speak is enough to support fraud. So good intentions in 1992 would not operate as a defense.

away a $1 million claim against someone who could afford to pay it, for an almost nominal amount of $25,000. And Mr. Kaufman's sound business judgment (arrived and announced and filed with the court for God and the world to see, before Mr. Rosenstein and Mr. Boudloche ever tried to find some way to allege claims against him) was that $225,000 would have been a reasonable settlement amount instead. No reasoning was given or suggested which would impeach Mr. Kaufman's proposed final report, or otherwise support Mr. Boudloche's proposed amount; so there was no support for the result approved below.

VI. <u>Argument</u>.

    A. <u>An Ignorant Trustee</u>. Normally a trustee is presumed to know the facts about the case he is administering, and the principles of law which govern it. When that is true, then the court can rely on the trustee's "business judgment" to serve as adequate support for his proposed compromise and settlements. But sometimes the trustee's testimony at the hearing on the proposed compromise and settlement will demonstrate his ignorance and lack of understanding of what he is doing. Normally, when someone wants to take $25,000 for a $1 million dollar claim against a defendant who can afford to pay it, there has to be some explanation other than, "throwing away a summary judgment case for all that money was good business judgment." And there is another explanation here.

        1. <u>What the Trustee Admitted Here</u>. Let's look at the evidence before the court on the hearing on this proposed compromise and settlement agreement.

        (a). <u>A Trustee Is Impeached When He Admits in His Proffer of Testimony that He Doesn't Understand</u>. In this case, Mr. Boudloche admitted, "I have been unable to understand the * * * reasoning or calculations behind the suit" being

-7-

settled.[2]  A decision that is made in ignorance is always arbitrary.[3]

       (b).  A Trustee Is Impeached When He Can't Say What the Case Is

About.  In this case, Mr. Boudloche on cross-examination never gave – and was unable to

remember – the fundamental aspects of the theories of the suit being settled.[4]  That is

making decisions based on ignorance.[5]

---

[2] On cross-examination, Mr. Boudloche also claimed that his attorneys could not understand what they were doing on this point as well.  Hearing transcript, p. 19:
       Q.  I believe your proposed proffer of evidence says you didn't understand the proposed final report.
       A.  I said – I think we said we had difficulty understanding it.  And I tried to get some – had several attorneys read that and the pleadings and nobody could really come up with where you were going with it.

This shows Mr. Boudloche did not understand what he was settling out, but he was not the only one.  Neither did his attorney-agents.  How can one make the right decision if nobody can tell you what you are throwing away?  That admission shows that there was an inadequate understanding on Mr. Boudloche's part of what he was giving up in the settlement.

[3] See the discussion in footnote 8 of Atkinson v. Equitable Life Assur. Soc. of the United States, 519 F.2d 1112 (5th Cir. 1975), holding it is necessarily "arbitrary" to fire someone "for cause" when the firing party did not know the "cause" at the time of the firing.

[4] Counsel argued some aspects.  But that's not good enough.  Arguments are not evidence.  Beathard v. Johnson, 177 F.3d 340, 348 (5th Cir. 1999); Guilbeau v. W.W. Henry Co., 85 F.3d 1149 (5th Cir. 1996), in fn. 47, p. 1168; United States v. Kane, 887 F.2d 568 (5th Cir. 1989); Alejandro v. Bell, 84 S.W.3d 383, 393 (Tex. App. Corpus Christi 2002, no writ), following McCain v. NME Hospitals, Inc., 856 S.W.2d 751, 757 (Tex. App. Dallas 1993, no writ); In re Energas Co., 63 S.W.3d 50 (Tex. App. 2001, no writ), in footnote 4, following Kern v. Gleason, 840 S.W.3d 730, 734 (Tex. App. Amarillo 1992, no writ).

[5] Consider these instances:
    1.  P. 16 of the hearing transcript.
       Q.  Was the majority then.  Was it 99% distributed?
       A.  I think most was.  I don't remember a percentage, Your Honor.
    2.  P. 16 of the hearing transcript.
       Q.  Did the plan provide for – that the – that you looked at net distributions after taxes, or did it provide for 25 percent of distributions?
       A.  No, he got distributions.  He was able to reduce that by what – I forgot

(c). A Trustee Opinion Gets Less Deference When He Is New and

Lacks Knowledge. The evidence showed that Mr. Boudloche is a newcomer to the case,

and had given it little attention, and was uninformed as to many of its details.[6] So his

_____

what the percentage was.  There was a formula for –
                Mr. Kaufman: Fifteen percent, approximately. (SIC: tape of the
hearing shows that Mr. Kaufman said "Fifty percent, approximately" and not "Fifteen").

       3. Hearing transcript, p. 19:
          Q.  For what years did you get tax returns for the Feldman entities?
          A.  Again, I can't recall the exact years.  Whatever years were called for in
the Plan, they provided.
       4. Hearing transcript, p. 19-20:
          Q.  Do you recall noticing in looking at those tax returns that there were
transactions by which there were sales and purchases of T-bills and certificates of deposits?
          (Objection by Mr. Moon overruled.)
          A.  I don't recall what the transactions were in the individual entities. _|_
We did not delve into them too deeply.
       5. Hearing transcript, p. 22:
          Q.  Do you recall that it says in the adversary proceeding that Feldman
Real Estate, Inc. had $700,000 in cash in it at the time that the plan was adopted?
          A.  I don't recall that specifically.
       6. Hearing transcript, p. 28.
          Q.  The point that I'm trying to say, Your Honor, is, is this witness has just
testified that they looked into the amounts of withholding for expenses and that they were all
fine.  I'm just testing that by showing him that here's an expense where there couldn't possibly
have been a real expense, and therefore, he should, perhaps, have investigated a little further.
          The Judge: Okay.  You can make that argument, but you've brought out
that fact.  Just move on.

   [6] Again see, p. 19-20 of the hearing transcript:

          Q.  Do you recall noticing in looking at those tax returns that there were
transactions by which there were sales and purchases of T-bills and certificates of deposits?
          (Objection by Mr. Moon overruled.)
          A.  I don't recall what the transactions were in the individual entities. _|_
We did not delve into them too deeply.

But it was the details that showed the $1 million in value; Appellant submits that not to delve
into the details was to miss the whole point!

decision was arbitrary; and the case will have to be remanded until he has informed himself of those things he has to know before he can settle the case reasonably and non-arbitrarily. Notice that when Mr. Kaufman wrote the Proposed Final Report, he identified $500,000 - 700,000 in damages which could be claimed just as a result of the review of the first (personal) tax returns of Mr. Feldman furnished in late 2000. And he suggested that a compromise and settlement of $225,000 would be a fair one. Mr. Boudloche knew that, because he read the proposed final report.[7] The effect of that knowledge on the part of Mr. Boudloche could not be overcome by his statement of ignorance and inability to follow and understand. Someone who cannot follow reasoning and understand it should leave the decisions to those who can follow reasoning and understand it.

(d). A Trustee's Business Judgment Is Suspect When He Doesn't Know the Rules. The evidence before the court showed that Mr. Boudloche mis-stated and misunderstood the rules as to what burden of proof the plaintiff had to carry in the action being settled. The $1 million value of the adversary proceeding came from the value of what creditors gave up when they accepted the plan. It was a restitution measure of damages, rather than an expectation measure. Mr. Boudloche admitted that Mr. Feldman violated the terms of the plan; he just considered the breach of contract "inadvertent."[8]

---

[7] See the hearing transcript at p. 22:
           The Court: Did you read that?
           A. I believe that we used your report as a jumping off place to prove or disprove the facts of those things.

[8] See hearing transcript, p. 24:

           Q. You didn't feel you wanted to seek a recovery for failure of consideration?

And he had at least one, maybe two meetings with him to determine that[9]  But what does

"inadvertent" have to do with it?  That does not prevent the aggrieved party from seeking

restitution damages from the contract breaker.  It is elementary first year contract law that a

contract may be breached in good faith or in bad faith.  Either way there is a duty to pay

damages.[10]  So Mr. Boudloche had the right to seek a restitution measure of damages –

the value of what creditors gave up – for breach of contract, but he refused to.   But how

could he make a proper settlement unless he knew those rules, knew how much he could

claim, knew what he was giving up when he took $25,000? As shown below, it is always an

abuse of discretion to make a decision based on the wrong rules.

   (e). <u>Does It Matter How Much Money the Defendant Has</u>.  One of the

things that often supports a compromise and settlement of a large claim for a relatively

small amount of money is the ability of the Defendant to pay.  If the defendant has a million

dollars, a million dollar claim against him is worth much more, than if he just has $25,000.

---

   A.  I believe that the plan – we found that the only failure was – and we felt comfortable that it was inadvertent – was the overwithholding of the -- of the income taxes in one case, and basically that's what the extra $10,000 as far as a penalty on that $14,000.

  [9] See hearing transcript, p. 24-25:

   Q.  Was your conclusion that Mr. Feldman's failures to pay were inadvertent based on your meetings with him face to face.
   A.  In our documentation and in our meetings with him, yes.
   Q.  And how many times did you meet with him?
   A.  We had one big meeting, maybe two face to face and _|_ several calls.  I don't recall exactly.  We were in contact with he and his attorneys over a considerable period of time.

  [10] For the proposition that the motive with which a contract is breached is seldom relevant in determining the authorized measure of damages, *see e.g.*, <u>Corbin on Contracts</u>, Sec. 992 (3rd Ed. 1964).

-11-

This is common knowledge among lawyers, and bankruptcy trustees.   But in this case, amazingly, Mr. Boudloche claimed that it was irrelevant how much money Mr. Feldman had and whether he could afford to pay the $1 million.[11]  This is contrary to common sense as well as the law.

      2. Incurable Admission.  Some admissions are incurable.  One of these is where the person with the authority to decide admits he doesn't know the rules.  That's a non-optional duty.  He will have to go back and start over; and be able to describe the rules, before his decision will be upheld as not arbitrary.

      (e). Failing to Follow the Rules Is an Abuse of Discretion.  Even a judge's discretion is abused when it appears that he is not following the applicable rules of law.[12]  The duty of a bankruptcy trustee to follow the law can hardly be less than the judge's.[13]  Nor may the bankruptcy trustee ignore his duty to try to maximize the funds paid

---

[11] See the hearing transcript, p. 25-26:

    Q. You will recall in the proposed final report there was discussion of the contention of Steve Ditto that Mr. Feldman had opened up at least four new liquor stores during the time that we are talking about?
(Objection by Mr. Moon _|_ overruled.)

    A. I am not aware that that would have impacted settlement.

[12] *See, e.g.,* In re Coastal Plains, Inc. (Browning Mfg. v. Mims, Trustee), 179 F.3d 197 (5th Cir. 1999). Held, p. 205, citing Koon v. U.S., 518 U.S. 81, 100, 116 S.Ct. 2033, 135 L.Ed.2d 292 (1996); Latvian Shipping Co. v. Baltic Shipping Co., 99 F.3d 690, 692 (5th Cir. 1996); and Meadowbriar Home for Children, Inc. v. Gunn, 81 F.3d 521, 525 (5th Cir. 1996); a court always abuses its discretion if its decision is based on an erroneous view of the law; see likewise, In re Barron (Daniels v. Barron), ___ F.3d ___ (5th Cir. April 4, 2003).

[13] *See* likewise, Protective Committee v. Anderson, 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed. 1 (1968), holding that "evaluations of evidence reached by the accurate application of erroneous legal standards are erroneous evaluations."

-12-

into the estate.

        (f). <u>Mr. Boudloche Did Not Have More Discretion than the Court</u>. You can't delegate what you don't have.[14] And you cannot let the delegatee take what you are forbidden to give. It is said to be "arbitrary" for the delegatee to exceed the scope of the delegation.[15] And even if the amount of delegation is not excessive, delegating what you do have is subject to some form of review. Again, the rules relating to due process are instructive here. In due process review, the Constitution contemplates limits on what a higher authority (including a court) may delegate. Even if it does not give too much, it is limited in the kind of delegation it can make. It cannot give unreviewable authority to a subordinate power.[16] When authority is delegated, some principle of guidance must exist

---

[14] See e.g., <u>Sims v. Fox</u>, 505 F.2d 857 (5th Cir. 1974), saying:

> An Air Force contract cannot grant that which Copngress specifically withheld. The Air Force must act within the authority delegated to it by Congress or, in certain cases, by the President. Any "regulations" or "contract" attempted in excess of that authority would be void.

[15] *See e.g.* <u>Gulf South Pipeline, Inc. v. FERC</u>, 876 F.2d 431 (5th Cir. 1989), where the court said:

> The standard of review of review of this Court is one of substantial deference, that is, abuse of discretion.6 Abuse of discretion in an administrative law setting involving the delegation of powers by the administrative agency occurs when that agency (the Delegator) has allowed the delegated person (the Delegatee) to act beyond the scope of the authority delegated. Thus, we examine the general question of whether or not it was an abuse of its discretion for FERC to interpret its regulation, 18 C.F.R. § 375.307 to allow the Director to reject Gulf South's Initial Report and to require additional filings for each new service.

[16] Discretion is normally presumed to be reviewable, rather than unreviewable, and clear and convincing evidence is required to alter this result. *See, eg.*, <u>Chevron Oil Co. v. Andrus</u>, 588 F.2d 1383 (5th Cir. 1979), saying:

> We are similarly unpersuaded by Interior's other arguments. It is quite

-13-

against which it can be reviewed.[17]  Since a bankruptcy trustee is a federal instrumentality,[18] it is subject to requirements of due process.  So the trustee cannot be allowed to administer the federal government's bankruptcy power free and clear of judicial review.

B.  Other Motives.  Normally it is assumed that a bankruptcy trustee's only motive is to make as much money as possible for the estate.  But sometimes it is apparent that other things are going on.  Sometimes a trustee or his counsel (or both) appear to have other motives.  That was the case here.

1.  Why Did He Recommend It?  It is questionable whether the trustee's mere recommendation of a transaction is sufficient where evidence appears of these other motives.  It is doubtful whether the usual rules deferring to the business judgment of a trustee to settle litigation continue to apply when the plan trustee in question is in that

---

true, as Interior points out, that the Secretary is permitted, rather than compelled, to issue leases.  This fact alone does not commit the matter to his unreviewable discretion.  Save the Bay, Inc. v. Administrator of E.P.A., 556 F.2d at 1293. Interior contends that because Congress expressly provided for judicial review elsewhere in the OCS Lands Act,13 its failure to do so in this case is telling.  But the maxim *expressio unius est exclusio alterius* has beendenied conclusive effect in this area.  *See* Morris v. Gressette, 432 U.S. at 506, n.22, 94 S.Ct. 2421.  In any event, a rule of statutory construction could not provide the necessary "clear and convincing evidence" necessary to support an inference of nonreviewability.  *See* Rusk v. Cort, 369 U.S. 367, 379-80, 82 S.Ct. 787, 794, 7 L.Ed.2d 809 (1962); *accord*, Dunlop v. Bachowski, 421 U.S. 560, 568, 95 S.Ct. 1851, 1858, 44 L.Ed.2d 377 (1975); Abbott Laboratories v. Gardner, 347 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967). (Footnote 13 omitted.)

[17] *See, e.g.*, Riley v. St. Luke's Episcopal Hospital, 196 F.3d 514, 530-31 (5th Cir. 1999) ("Without any intelligible principle to constrain the relator's discretion, there can be no valid delegation of executive power.")

[18] Barton v. Barbour, 104 U.S. 126, 26 L.Ed. 672 (1881) (explaining that this is why a bankruptcy trustee may not be sued outside his appointing court without that court's permission.)

-14-

position.  Then, the trustee has to be able to show that the transaction is objectively

supported by a neutral analysis of the facts, and not just by his recommendation.

(a).  The Situation Here.  This trustee demonstrated on cross-

examination and by his other conduct that he appears to have other motives to settle,

besides a zeal to make money for the bankruptcy estate.  That can create a conflict.

(b).  Personal Motives.  Mr. Boudloche's testimony demonstrated

personal bias and hostility toward Mr. Kaufman.    This is a conflict between the decision-

maker and the person affected by the decision.  This requires a heightened standard of

review.[19]  At the point if the conflict, it became Mr. Boudloche's obligation to show objective

grounds supporting his proposed compromise and settlement, not just his personal

judgment, which might have been colored by his prejudices.

(c)  Lack of Objective Support.  In this case Mr. Boudloche admits

waiving without additional consideration additional damages that might have been

recoverable because he allegedly thought the defendant's wrongs were "inadvertent".[20]  But

that's not right.   Who gave Mr. Boudloche the right to decide that he would not demand

---

[19] Chevron Chemical Co. v. Oil, Chemical & Atomic Workers Local Union 4-447, 47
F.3d 139, 444 (5th Cir. 1995), citing Duhon v. Texaco, Inc., 15 F.3d 1302, 1306 (5th Cir. 1994).

[20] In re W.J. Services Inc. (Jones v. Cage), 146 B.R. 190 (SD Tex. 1991) (Hittner,
Dist. J.).  Held, p. 191, "The central purpose of any chapter 7 liquidation is to maximize
payout to creditors.  See Burlington v. Crouse, 228 U.S. 459, 473, 33 S.Ct. 564, 568, 57
L.Ed. 920 (1913)."  Held further, even in Chapter 11, "the interests of the creditors, not
debtors, are paramount" citing In re Texas Extrusion Corp., 844 F.2d 1143, 1159 (5th Cir.),
cert. denied, 488 U.S. 926 (1988).  Giving the debtor a break at creditors' expense because
of a (mistaken) view that the debtor's wrongdoing was "innocent" violates those rules of
law.

the full amount of penalty that the law provides for a person breaching the deal that one has made? It was not Mr. Boudloche's job to be merciful to Mr. Feldman. His duty was to the creditors. It's not his job to take less than full payment for creditors.[21] And suppose he had discretion to give away creditors money (which he didn't), whenever he felt wrongdoing was unintentional. Still, no reason was given to substantiate Mr. Boudloche's conclusion that Mr. Feldman's wrongs were unintentional – and a lot of evidence existed to the contrary. Was it unintentional to make the fraudulent conveyances that were settled in the plan? Was it unintentional to keep the bank stock? Was it unintentional to schedule the bank stock at $15,000 when it was worth well into the six figures? Was it unintentional to promise creditors five years of future income when one of Mr. Feldman's entities had $700,000 in cash available when the plan was confirmed?

    2. *Sub Rosa* Closing of the Estate. Confirming a plan is the goal of a Chapter 11 bankruptcy proceeding; the other provisions and terms of the Bankruptcy Code are not supposed to interfere with that. Therefore, the Fifth Circuit adopted the "*sub rosa*" plan doctrine.[22] A compromise and settlement agreement is not supposed to be a replacement for confirmation of a plan. Here there was a confirmed plan. But it is still possible to commit a wrong against creditors by evading their rights under the plan. A

--------------------------------------------------

[21] See cases cited in the previous footnote.

[22] The law forbids *sub rosa* plans and presumably therefore *sub rosa* plan amendments. In re Cajun Electric Power Coop., Inc. (Official Committee of Unsecured Creditors v. Cajun Electric Power Cooperative, Inc.), 119 F.3d 349 (5th Cir. 1997); analyzing In re Braniff Airways, Inc. (Pension Benefit Guar. Corp. v. Braniff Airways, Inc.),700 F.2d 935, 940 (5th Cir.1983); In re Continental Air Lines, Inc. (Institutional Creditors of Continental Air Lines v. Continental Air Lines, Inc.), 780 F.2d 1223, 1227-28 (5th Cir.1986)

-16-

waiver can potentially usurp the rights of creditors to make a plan and have it effective. Here Mr. Boudloche proposes to waive the basic consideration that creditors got in the first place.[23] It is improper to try to *de facto* close the estate by making an order on compromise and settlement in these circumstances.

(a). <u>No Business Reason to Do It</u>.  There was no good business reason to make this deal.  Neither the claims nor the administrative expenses had been finally settled.  Because of the appeals pending, it has been clear for a long time that administrative expenses are going to be settled only after the appeals are finished.  So there had to be a secret agenda here, besides making money for creditors and paying them. Furthermore, no effort has been made by Mr. Boudloche to settle the claims of creditors, and determine who is the real 90% creditor of the estate, CKS, or Parkwell.  So there has to be a secret agenda here, besides making money for creditors and paying them.

(b). <u>Appellant Is the Target</u>.  Appellant had a legally protected interest in being returned to the *status quo ante* if his appeal prevailed, which the replacement plan trustee is trying to terminate.  That is why the bankruptcy court's position is wrong that Appellant lacked "standing."  Normally, reversal on appeal undoes all interim actions taken in reliance on the appealed judgment.[24]  A person does not lose standing unless a decision

---

[23] Even though a party can waive conditions and terms in contracts, he cannot waive the basic value that he was promised in the case – otherwise the requirement of consideration would be made meaningless.  <u>Corbin on Contracts</u> Secs. 151, 753 (3d Ed. 1964).

[24] <u>Cleveland v. Tufts</u>, 69 Tex. 580, 7 S.W.72 (1888) is the leading authority in Texas.  It tells us that upon reversal, a judgment is treated as though it never had existed.  The other Texas leading Texas authorities on this point are <u>Peticolas v. Carpenter</u>, 53 Tex. 23 (1880) and <u>Texas Land & Irrigation Co. v. Sanders</u>, 101 Tex. 616, 111 S.W. 648 (1908).  See also this comment on

does not affect him financially.  The law is clear that appellants are affected financially by those things that have to be undone on reversal on appeal.[25]  The only time a different

_____

Cleveland from 3-B Tex. Jur. 774, "Appeal & Error" (1949):

> A plaintiff who has enforced an erroneous judgment is deemed to have acted at the peril of having to respond in damages.  Upon reversal of the judgment, he must account to the full extent of the injury that he has inflicted, and not merely for the amount he or his agents have reaped as fruits of their illegal act, or the sum at which this act has caused the property to have been sacrificed.  In order that the defendant may be made whole, he may recover the value of the property in the state in which it was at the time when it was returned to the sheriff, as well as the damages suffered; furthermore he may recover the costs incurred by him, and interest.  (Four citations to Cleveland v. Tufts omitted).

The point is, this payment right may be a contingent right, contingent on success on appeal, but it is an unavoidable one.  And once the appeal is filed, the bankruptcy court loses jurisdiction over this right until remand; and so is incapable of estimating or reducing it.  While by statute, the sale of property under the bankruptcy code cannot be challenged, Sec. 363(m), the ability of the bona fide purchaser to keep the property does not imply that the successful appellant loses his damages claim against the entity which acted against the property.  Libuti v. United States, 178 F.3d 114, at p. 122 (2d Cir. 1999).

[25]  In the words of 3 Am. Jur. 740,  "Appeal & Error", Sec. 1242, at fn. 7 (1936), "In other words, a party against whom an erroneous judgment or decree has been carried into effect is entitled, in the event of a reversal, to be restored by his adversary to that which he has lost thereby," citing some 30 cases, including several older U.S. Supreme Court cases, such as Arkadelphia Mill Co. v. St. Louis Southwestern Ry. Co., 249 U.S. 134, 39 S.Ct. 237, 63 L.Ed. 517 (1929); Bank of United States v. Bank of Washington, 6 Pet. (___ U.S.) 8, 8 L.Ed. 299 (1841); Baltimore & Ohio Rd. Co. v. United States, 279 U.S. 781, 49 S.Ct. 492, 73 L.Ed. 954 (1936); Dakota County v. Glidden, 113 U.S. 222, 5 S.Ct. 528, 28 L.Ed. 981 (1896); Reed v. Allen, 286 U.S. 181, 52 S.Ct. 532, 81 A.L.R. 703, 76 L.Ed. 1054 (1934); and Tenth Ward Road Dist. v. Texas & Pacific Ry.  Co., 12 F.2d 245, 45 A.L.R. 1513 (1929).  See similarly such more recent cases as Libuti v. United States, 178 F.2d 114 (2d Cir. 1999) (Held, p. 122, US not exempt from rule owing to put appellant back in *status quo ante* where it enforced its judgment while it was still on appeal, and the appeal was later sustained; held further, p. 122, appellant did not owe US to seek a stay pending appeal, and failure to do so did not invalidate the right to rely on this rule); Republic Natl. Bk. of Miami v. United States, ___ U.S. ___, 113 S.Ct. 554, at p. 558, 121 L.Ed2d 474 (1992) (just because government sold the property claimed by the bank, and kept the money, that did not moot the appeal, and if the government lost the appeal, it could be made to repay the bank).  *See also*, In re Crystal Oil Co., 854 F.2d 79 (5th Cir. 1988) (held, there is no

-18-

result obtains is where it is mandated by statute, such as Bankruptcy Code Sec. 363(m) governing effect of reversal on appeal of sales of property. This is not a 363(m) case; and the plan was confirmed 11 years ago; and the court cannot now estimate claims in order to confirm it. And the court cited no authority for the proposition that just the existence of an appealed order destroys standing to oppose attempts to close an estate before the appeal has ever been ruled on.[26]

VII. Conclusion. Mr. Boudloche's admissions show that he could not properly have made the decision to compromise and settle below. He didn't explain how Mr. Kaufman's calculations were wrong, and he had the same data in front of him that Mr. Kaufman had, and allegedly even more data. He didn't point to a single thing supporting a different result. He admitted he didn't understand what Mr. Kaufman was doing. Neither did his attorneys. He gave a reason for forgiving Mr. Feldman's debt (oh, that was "inadvertent"!) that is not legally permitted to fiduciaries for creditors (i.e., he breached his fiduciary duties to

---

requirement that an appellant must seek a stay pending an appeal); followed in In re Appletree Markets, Inc., 155 B.R. 431, 435 (SD Tex. 1993) (Simeon Lake, Dist. J.); BMG Music v. Martinez, 74 F.3d 87, at p. 89 in fn. 3 (5th Cir. 1996) (Wisdom, Cir. J.) (appeals are not mooted by sale of property being appealed about, so long as issue remains of who gets the money).

[26] In re Manges (Manges v. Seattle First Natl. Bank), 29 F.3d 1034 (5th Cir. 1994) does indicate that an appeal can become "prudentially moot" – i.e., not moot in the constitutional sense, but moot in the sense that if a plan is "substantially consummated" and the assets have passed into the hands of those who are unable to return them, a court will not undo the transaction. However, this case notes that "substantial consummation" occurs when payments begin being made to regular CREDITORS, not just payments of the administrative expenses in a case. The creditors' claims have never been finally fixed; so they could not be and never were paid anything; so that substantial consummation of this plan is IMPOSSIBLE at the present time.

-19-

creditors when he made that deal, and because of the conflict, is no longer entitled to deference.) So the bankruptcy court abused its discretion to approve it. So this Court needs to examine the proposed settlement, and reverse it.

WHEREFORE, PREMISES CONSIDERED, Appellant respectfully asks that the Court reverse the decision below, and remand for a new determination based on proper understanding and application of the real rules applicable to the adversary proceeding, and not the unknowing and uncaring determination made by Mr. Boudloche and his counsel.

Respectfully Submitted,

Colin Kelly Kaufman, In propria personam
State Bar of Texas # 11113000
So. Dist. Federal ID # 9242

Colin Kelly Kaufman, Attorney at Law
1106 Third St. 78404-2312
P. O. Box 1662
Corpus Christi, TX. 78403-1662
Telephone (361) 888-8865
Telecopier (361) 888-8172

## Certificate of Service

I certify I had one of the personnel at this law office serve the foregoing writing on the persons shown on the list below, by U.S. mail, first class postage prepaid, this 28th day of April, 2002.

Colin Kelly Kaufman

## Appeal Service List

1.    Matthew A. Rosenstein, Esq.          2.    Richard Grant, Esq.
      420 American Bank Plaza                     3102 Oak Lawn #700
      Corpus Christi, TX. 78475                   Dallas, TX. 75219

      FAX (361) 883-5590                          FAX (214) 777-5082

-20-

3.    Michael B. Schmidt, Esq.
      712 American Bank Plaza
      Corpus Christi, TX. 78475

      FAX (361) 884-6000

5.    James P. Moon, Esq.
      1401 Elm St., Suite 3300
      Dallas, TX. 75202-2946

      FAX (361) 931-1452

4.    Ron Simank, Esq.
      Schauer & Simank, Attys.
      615 N. Upper Broadway, Ste. 2000
      Corpus Christi, TX. 78476

      FAX (361) 884-2822

6.    Colin Kelly Kaufman
      P. O. Box 1662
      Corpus Christi, TX. 78403-1662

      FAX (361) 888-8172